## Cooper *v.* Telfair.
### *Constitutional law.*

A state legislature, before the adoption of the constitution of the United States, had power to pass a bill of attainder and confiscation, unless restrained by the state constitution.

The act of the legislature of Georgia, of the 4th of May 1782, inflicting penalties on, and confiscating the estate of such persons as are therein declared guilty of treason, is not repugnant to the constitution of that state.

*Semble*, that this court can declare an unconstitutional law invalid.(*a*)

*Quære?* Whether this court can invalidate laws enacted previously to the adoption of the constitution of the United States.

Error from the Circuit Court for the district of Georgia. The record exhibited the following case :

Basil Cooper, at present of the island of Jamaica, in the dominions of his Britannic majesty, formerly an inhabitant of the state of Georgia, brought an action in the circuit court of Georgia, to November term 1797, against Edward Telfair, of the district of Georgia, upon a bond for 1000*l.* sterling, equal to $4285.70, dated the 14th of May 1774.

After *oyer* of the bond and condition, the defendant pleaded in bar, 1st, Payment : 2d, "That on the fourth day of May 1782, an act was passed by the legislature of the state of Georgia, entitled 'An act for inflicting penalties on, and confiscating the estate of such persons as are therein declared guilty of treason, and for other purposes therein mentioned,' by which it is, among other things, enacted and declared, 'that all and every the persons, named and included in the said act, are banished from the said state ; and that all and singular the estate, real and personal, of each and every of the aforesaid persons, which they held, possessed or were entitled *to, in law or equity, on the 19th day of April 1775, and which they have held since, or do hold in possession, or others holding in trust for them, or to which they are, or may be, entitled, in law or equity, or which they may have, hold or be possessed of, in right of others, together with all debts, dues and demands of whatsoever nature, that are or may be owing to the aforesaid persons, or either of them, be confiscated to and for the benefit of this state.' That the said Basil Cooper is expressly named and included in the above in part recited acts ; and that he was, on the said 4th day of May 1782, and for a long time before, a citizen of the state of Georgia, and of the United States of America. That the said Basil Cooper, being a citizen, &c., owing allegiance, &c., on the 4th of May 1782, and for a long time before, adhered to the troops of his Britannic majesty, then at open war with the said state of Georgia and United States of America, and did take up arms with the said troops, &c. That the said Basil Cooper hath never since returned within the limits and jurisdiction of the said United States, or either

[*15

---

(*a*) The federal courts have the power to declare an unconstitutional law invalid. Federalist No. 78 ; Marbury *v.* Madison, 1 Cr. 137 ; Cohens *v.* Virginia, 6 Wheat. 386, 414.

of them. That by virtue of the above-recited act, and also of an act, entitled, ' An act to continue an act to authorize the auditor to liquidate the demands of such persons as have claims against the confiscated estates, and for other purposes therein mentioned,' passed the 13th February 1786 : and of another act entitled ' An act to compel the settlement of the public accounts, for inflicting penalties on officers of this state, who may neglect their duty, and for vesting the auditors with certain powers for the more speedy settlement of the accounts of this state, with the United States,' passed the 10th of February 1787 ; the sum of money mentioned in the condition of the bond, and all interest thereon, have become forfeited and confiscated to the state of Georgia ; and the right of action attached thereto ; and no cause of action hath accrued to the said Basil Cooper to demand and have of the said Edward Telfair, the said sum of money, &c."

To this plea, the plaintiff replied, " that he was never tried, convicted or attainted of the crime of treason alleged against him ; and that by the con stitution of the state (in force at the time of passing the acts in the said plea set forth, to wit, on the 4th·day of May 1782), unanimously agreed to in a convention of the people of this state, on the 5th of February 1777, it is ordained, that—

" Article 1. The legislative, executive and judiciary departments shall be separate and distinct, so that neither exercise the powers properly belonging to the other.

" Article 7. The house of assembly shall have power to make such laws and regulations, as may be conducive to the good order and well-being of the state, provided such laws and regulations be not repugnant to the true intent and meaning of any rule or regulation contained in this constitution.

*16]          " Article 39. All matters of breach of the peace, felony, murder and *treason against the state, to be tried in the county where the crime was committed, &c.

" Article 60. The principles of the *habeas corpus* act shall be part of this constitution.

" Article 61. The freedom of the press, and the trial by jury, to remain inviolate for ever.

" And that the said recited acts, so far as they can operate to bar the said Basil from maintaining his action, are repugnant to the true intent and meaning of divers rules and·regulations contained in the said constitution, and are, as to the action of the said Basil, null and void: without that, &c." The defendant demurred to the replication ; and the plaintiff joined in demurrer.

On the 2d of May 1799, the circuit court, composed of ELLSWORTH, Chief Justice, and CLAY, District Judge, decided, that the replication was insufficient ; that the plea in bar was sufficient ; and that judgment on the demurrer be entered for the defendant. Upon this judgment, the present writ of error was brought, and the following errors assigned : 1. The general errors. 2. That the plea does not set forth the constitutional power of the legislature of Georgia, to deprive the plaintiff of his rights as a citizen ; and on their own authority, to pass sentence of confiscation and banishment. 3. That the judgment decides that the legislature had cognisance of the treason alleged against the plaintiff, and could legally try, convict and banish him ; whereas, they had no such power, on constitutional principles.

Cooper v. Telfair.

4. That by the judgment, it appears, the legislature could deprive individuals of their lives and property, without trial by jury, or inquest of office, contrary to the constitution of Georgia. 5. That the judgment gives effect to an act of Georgia, which is an union and usurpation of judicial, as well as legislative powers; which powers the constitution declares should be kept separate.

The case was argued by *E. Tilghman,* for the plaintiff, and by *Ingersoll* and *Dallas,* for the defendant, on the 7th of February 1800, upon the general question, whether the confiscation acts of Georgia, were repugnant to the constitution of the state, and therefore void?

For the *plaintiff.*—1st. If the law is contrary to the constitution, the law is void; and the judiciary authority either of the state, or of the United states, may pronounce it so. (2 Dall. 308, 410; 3 Ibid. 383.) 2d. The law is contrary to the constitution, inasmuch as it is an exercise of the judicial power by the legislative *authority, in opposition to an express prohibition of such an union of jurisdiction. That acts of attainder, [*17 banishment and confiscation are an exercise of judicial power, the English as well as the American authorities, clearly establish. (2 Woodes. Lect. 621-2; 11 State Trials, 25; 6 Ibid. 405; 4 Inst.; 2 Woodes. 147; 3 Dall. 389.) 3d. Whatever right Georgia had to confiscate the property of her enemy; yet, as the pleadings show the plaintiff to have been a citizen, his property could only be forfeited by the regular judgment of a court, upon a trial by his peers, or the law of the land. As the case is now presented, it is a legislative act, by which the property of an individual citizen is arbitrarily taken from him, and given to the state of Georgia. (3 Dall. 388, 389.)

For the *defendant.*—It is conceded, that if the law plainly and obviously violates the constitution of Georgia, it is void, and never was a valid rule of action. The only question, therefore, to be discussed, is, whether such a fatal collision actually exists? Or, in other words, whether the legislature of Georgia had a power, consistently with the constitution, to pass a law, confiscating the property of her own citizens, who had fled beyond the reach of the ordinary legal process? 1st. Georgia, at the time of passing the law, was a sovereign, independent state, with all the rights, prerogatives and powers resulting from that character; except so far as she had expressly devolved on congress a portion of her sovereignty; an exception that does not affect the present case. 2d. To a corporation of the most limited nature, the power of passing by-laws is a necessary incident. And to every sovereign legislature, an indefinite power of making laws is equally an incident, restricted only by impossibilities; for even if they should be against natural justice, Blackstone tells us, they would be valid. 3d. The constitution of Georgia does not declare, that "no bill of attainder shall be passed." There is, therefore, no express restriction of the sovereign legislative authority upon the subject; and to decide in favor of the restriction, would be to make, *ex post facto,* not to enforce, the constitution of Georgia. 4th. Such acts of attainder and confiscation were not novelties in America, any more than in England. (2 Woodes. Lect. 621, 624, 497, 498, 622. See Confiscation Acts of the several states.) They are exercises of political authority, rather than of judicial power; they are laws, not judgments. And as the

power of attainder, banishment and confiscation, is essential to the existence and operations of government, yet, cannot be exercised by the ordinary tribunals of justice ; it naturally belongs to the sovereign, that is, to the legislature of the nation. 5th. But, independently of the necessity of the existence of such a power, and of the implication that it does exist under every constitution, unless it is expressly excluded, a just analysis of the various clauses of the constitution *itself (which contemplates a trial *18] by jury only in the case of an offence committed within a county of the state), the contemporaneous construction of the legislature of Georgia, the corroborative example of other states, whose constitutions contain the same provisions, and even the authoritative recommendations of congress, with the recognitions of the treaty of peace ; demonstrate the legitimacy and validity of the acts of attainder and confiscation, which naturally grew out of the revolutionary war. 6th. Attainder and confiscation acts are most common in England ; yet, generally speaking, the judicial power and the legislative power, are there kept separate and distinct. (Blackstone, Woodeson, Montesquieu, De Lolme.) They are the exercise of a constitutional power of legislation. (2 Wood. 621, 647.) And to exercise a power, not within the scope of the judicial authority, cannot be confounding the distinct branches of the government.

On the 13th of February 1800, the judges (except the Chief Justice, who had decided the cause in the circuit court) delivered their opinions, *seriatim*, in substance, as follows :

WASHINGTON, Justice.—The constitution of Georgia does not expressly interdict the passing of an act of attainder and confiscation, by the authority of the legislature. Is such an act, then, so repugnant to any constitutional regulation, as to be excepted from the legislative jurisdiction, by a necessary implication ? Where an offence is not committed within some county of the state, the constitution makes no provision for a trial, neither as to the place, nor as to the manner. Is such an offence (perhaps, the most dangerous treason) to be considered as beyond the reach of the government, even to forfeit the property of the offender, within its territorial boundary ? If the plaintiff in error had shown, that the offence with which he was charged, had been committed in any county of Georgia, he might have raised the question of conflict and collision, between the constitution and the law : but as that fact does not appear, there is no ground on which I could be prepared to say, that the law is void. The presumption, indeed, must always be in favor of the validity of laws, if the contrary is not clearly demonstrated.

CHASE, Justice.—I agree, for the reason which has been assigned, to affirm the judgment. Before the plaintiff in error could claim the benefit of a trial by jury, under the constitution, it was, at least, incumbent upon him to show, that the offence charged was committed in some county of Georgia, in which case alone, the constitution provides for the trial. But even if he had established that fact, I should not have thought the law a violation of the constitution. The general principles contained in the constitution are not to be regarded as rules to fetter and control ; but as matter merely declaratory and directory ; for even in the constitution

*itself, we may trace repeated departures from the theoretical doctrine, that the legislative, executive and judicial powers should be kept separate and distinct.

There is, likewise, a material difference between laws passed by the individual states, during the revolution, and laws passed subsequently to the organization of the federal constitution. Few of the revolutionary acts would stand the rigorous tests now applied : and although it is alleged, that all acts of the legislature, in direct opposition to the prohibitions of the constitution, would be void ; yet, it still remains a question, where the power resides to declare it void ? It is, indeed, a general opinion, it is expressly admitted by all this bar, and some of the judges have, individually, in the circuits, decided, that the supreme court can declare an act of congress to be unconstitutional, and therefore, invalid ; but there is no adjudication of the supreme court itself upon the point. I concur, however, in the general sentiment, with reference to the period, when the existing constitution came into operation ; but whether the power under the existing constitution, can be employed to invalidate laws previously enacted, is a very different question, turning upon very different principles ; and with respect to which, I abstain from giving an opinion ; since, on other ground, I am satisfied with the correctness of the judgment of the circuit court.

Paterson, Justice.—I consider it a sound political proposition, that wherever the legislative power of a government is undefined, it includes the judicial and executive attributes. The legislative power of Georgia, though it is in some respects restricted and qualified, is not defined by the constitution of the state. Had, then, the legislature power to punish its citizens, who had joined the enemy, and could not be punished by the ordinary course of law ? It is denied, because it would be an exercise of judicial authority. But the power of confiscation and banishment does not belong to the judicial authority, whose process could not reach the offenders : and yet, it is a power that grows out of the very nature of the social compact, which must reside somewhere, and which is so inherent in the legislature, that it cannot be divested or transferred, without an express provision of the constitution.

The constitutions of several of the other states of the Union, contain the same general principles and restrictions ; but it never was imagined, that they applied to a case like the present ; and to authorize this court to pronounce any law void, it must be a clear and unequivocal breach of the constitution, not a doubtful and argumentative application.

*Cushing, Justice.—Although I am of opinion, that this court has [*20 the same power that a court of the state of Georgia would possess, to declare the law void, I do not think, that the occasion would warrant an exercise of the power. The right to confiscate and banish, in the case of an offending citizen, must belong to every government. It is not within the judicial power, as created and regulated by the constitution of Georgia: and it, naturally, as well as tacitly, belongs to the legislature.

By the Court.—Let the judgment be affirmed, with costs.